# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA KINGSTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | Case No. CV 09-6315 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.
## INTRODUCTION AND SUMMARY

On September 4, 2009, plaintiff Linda M. Kingston ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant" or "Commissioner"), seeking review of a denial of disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). [Docket No. 3.]

On March 9, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 12, 13, 14.]

On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge. [Docket No. 16.] Both Plaintiff and Defendant

1  subsequently consented to proceed for all purposes before the Magistrate Judge
2  pursuant to 28 U.S.C. § 636(c).  [Docket Nos. 17, 18.]

3       Pursuant to a September 29, 2009 case management order, the parties
4  submitted a detailed, 25-page joint stipulation for decision on May 6, 2010.  [Docket
5  No. 21.]  The Court deems the matter suitable for adjudication without oral
6  argument.

7       In sum, having carefully studied, *inter alia*, the parties' joint stipulation and
8  the administrative record, the Court concludes that the ALJ erred in his step-two
9  analysis by failing to find Plaintiff's mental and physical impairments were severe,
10 which were established by (1) the opinion of the treating physician Dr. Ang; and (2)
11 the opinion of Dr. Pieroni and his team from the Tri-City Mental Health Center.  The
12 Court thus remands this matter to the Commissioner in accordance with the
13 principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

16      Plaintiff, who was 50 years of age on the date of her administrative hearing,
17 has a high school equivalent education.  (Administrative Record ("AR") at 66, 156,
18 1334, 1380, 1410.)  Her past relevant work includes employment as a teacher's
19 assistant at School of Fashion and Design for Handicapped Adults in Alhambra,
20 California, which is run by Plaintiff's mother.  (*Id.* at 176, 1335, 1436.)

21      Plaintiff protectively filed for DIB and SSI on February 6, 2002, alleging that
22 she has been disabled since May 31, 2000 due to depression and diabetes mellitus.[1]
23 (AR at 61, 156, 1302, 1312.)  Plaintiff's applications were denied initially and upon
24 reconsideration, after which she filed a timely request for a hearing.  (*Id.* at 60, 61,

---

[1] It appears that Plaintiff's initial DIB and SSI applications may have also alleged impairments of "vision problems" and "difficulty walking." (*Compare* AR at 66, 95 *with id.* at 60, 61, 1306, 1312.)

2

90, 95, 100, 1306, 1307, 1312, 1313.)

On November 19, 2003, Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ").  (AR at 65, 1326, 1330-1353.)  On April 28, 2004, the ALJ issued an unfavorable decision denying Plaintiff's request for benefits ("April 2004 Decision").  (*Id.* at 65-75.)

Plaintiff appealed the April 2004 Decision and, on September 23, 2005, the Appeals Council vacated the April 2004 Decision and remanded the case to the ALJ for further proceedings.  (AR at 121-124.)  The Appeals Council directed the ALJ to "[o]btain additional evidence concerning [Plaintiff's] mental impairment(s)[,] . . . [o]btain evidence from a medical expert (who is an expert in psychiatry) to clarify the nature and severity of [Plaintiff's impairment,] . . . [f]urther evaluate [Plaintiff's] mental impairments in accordance with . . . 20 CFR 404.1520a and 416.920a, . . . [and g]ive further consideration to [Plaintiff's] maximum residual functional capacity[.]"  (*Id.* at 122-123.)

On January 17, 2006, Plaintiff, represented by counsel, appeared and testified at a second hearing before an ALJ.  (AR at 80, 1377, 1380-1405, 1408-1409.)  On July 27, 2006, the ALJ denied Plaintiff's request for benefits ("July 2006 Decision").  (*Id.* at 80-86.)

Plaintiff appealed the July 2006 Decision and, on February 15, 2008, the Appeals Council vacated the July 2006 Decision and remanded the case to the ALJ for further proceedings.  (AR at 152-154.)  The Appeals Council again directed the ALJ to "[f]urther evaluate [Plaintiff's] subjective complaints[,] . . . [f]urther evaluate [Plaintiff's mental impairments[,] . . . [and g]ive further consideration to [Plaintiff's] maximum residual functional capacity[,]" among other things.  (*Id.* at 153.)

On August 12, 2008, Plaintiff, represented by counsel, appeared and testified at a third hearing before an ALJ.  (AR at 20, 1410-1413, 1427-1436, 1440-1441.)  Psychiatrist Charles Agler, M.D. ("Dr. Agler"), and internist Harvey Alpern, M.D. ("Dr. Alpern"), both medical experts ("ME"), and Gail Maron, a vocational expert

("VE"), also testified. (*Id.* at 20, 1414-1427, 1436-1439.)

On November 12, 2008, more than six years after her initial applications, the ALJ once again denied Plaintiff's request for benefits. (AR at 20-27.) Applying the five-step sequential evaluation process, which is discussed in detail below, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. (*Id.* at 22.)

At step two, the ALJ found that Plaintiff suffers from "diabetes and a mood disorder," (AR at 22), but concluded that Plaintiff "does not have a severe impairment or combination of impairments." (*Id.* at 25 (bold omitted).)

At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairments, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations.[2/] (AR at 26.) The ALJ then assessed Plaintiff's residual functional capacity[3/] ("RFC") and determined that Plaintiff has no exertional limitations and has a mild limitation in social functioning and a mild limitation in concentration, persistence or pace. (*Id.* at 25, 26.)

Based on Plaintiff's RFC and the VE's testimony, the ALJ found, at step four, that Plaintiff can perform her past relevant work as a teacher's aide. (AR at 26.) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 21, 27.)

Plaintiff filed a timely request for review of the ALJ's decision, which was

---

[2/] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[3/] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

4

denied by the Appeals Council. (AR at 7-9, 15-16.) The ALJ's decision stands as the final decision of the Commissioner.

## III.
## APPLICABLE LEGAL STANDARDS

### A. Five-Step Inquiry To Ascertain A Cognizable Disability

A claimant must satisfy three fundamental elements to be eligible for disability benefits: (1) a medically-determinable impairment; (2) the impairment prevents the claimant from engaging in substantial gainful activity; and (3) the impairment is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A well-established five-step sequential inquiry is utilized to assess whether a particular claimant satisfies these three elements. The inquiry proceeds as follows:

First, is the claimant engaging in substantial gainful activity? If so, the claimant cannot be considered disabled.

Second, does the claimant suffer from a "severe" impairment, *to wit*, one continuously lasting at least 12 months? If not, the claimant is not disabled.

Third, does the claimant's impairment or combination of impairments meet or equal an impairment specifically identified as a disability by the Commissioner under 20 C.F.R. part 404, subpart P, appendix 1? If so, the claimant is automatically determined to be disabled.

Fourth, is the claimant capable of performing his or her past work? If so, the claimant is not disabled.

Fifth, does the claimant have the so-called "residual functional capacity" to perform some other type of work? The critical question posed here is whether the claimant can, in light of the impairment and his or her age, education and work experience, adjust to another form of gainful employment?

If a claimant is found "disabled" or "not disabled" along any of these steps,

5

there is no need to complete the remaining inquiry. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Tackett*, 180 F.3d at 1098-99.

B. <u>Standard of Review on Appeal</u>

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## ISSUES PRESENTED

Three disputed issues are presented for decision here:

1. Whether the ALJ properly considered the opinion of the treating physician, Dr. Ang, (Joint Stip. at 3-7, 9);

2. Whether the ALJ properly considered the treating notes from Tri-City Mental Health Center, (*Id.* at 9-18, 20-21); and

3. Whether the ALJ properly held that Plaintiff's condition is not severe. (*Id.* at 21-23, 24.)

## V.
## DISCUSSION

Plaintiff contends that the ALJ erred in concluding that she does not suffer from a severe mental or physical impairment. (*See* Joint Stip. at 21-23, 24.) Specifically, Plaintiff maintains that the medical evidence provided by her treating physicians Dorcas Ang, M.D. ("Dr. Ang"), Charles Pieroni, M.D. ("Dr. Pieroni"), and her treatment team from Tri-City Mental Health Center establishes that she suffers from severe physical and mental impairments. (*See id.* at 21-23.)

A. Step-Two Inquiry Requires A "*De Minimus*" Threshold Showing

The threshold inquiry at step-two is whether or not a claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). The step-two inquiry is defined as "'a *de minimis* screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001, *as amended* Aug. 9, 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1289-90. "Important here, at the step two inquiry, is the requirement that the ALJ must consider *the combined effect* of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290 (emphasis added).

"An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal

7

effect on an individual[']s ability to work."[4/] *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28,[5/] 1985 WL 56856, at *3).

In addition, "if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb*, 433 F.3d at 687 (quoting SSR 85-28, 1985 WL 56856, at *4) (brackets omitted).

B. Medical Assessments of Plaintiff

Plaintiff's medical history is lengthy, but a detailed recitation is necessary for the requisite context.

Starting on February 12, 2003, Plaintiff received treatment for her diabetes from internal medicine physician Dr. Ang. (AR at 409-414, 418-426.) On April 30, 2003, Dr. Ang completed a diabetes mellitus impairment questionnaire. (*Id.* at 409-414.) Dr. Ang diagnosed Plaintiff with type II diabetes and assessed Plaintiff's

---

[4/] "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting[.]" *Edlund*, 253 F.3d at 1159 (internal citations omitted).

[5/] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

8

1  prognosis as "good." (*Id.* at 409.) Dr. Ang further found that Plaintiff suffered from
2  "loss of manual dexterity [and] tingling of [right] leg," "difficulty walking," and
3  "psychological problems." (*Id.* at 409-410.)
4       In an eight hour day, Dr. Ang restricted Plaintiff to sitting for zero to one
5  hour, standing and/or walking for one to two hours, and occasionally lifting and
6  carrying five to ten pounds. (AR at 412.) Dr. Ang also opined that Plaintiff's "pain,
7  fatigue or other symptoms" are frequently "severe enough to interfere with attention
8  and concentration." (*Id.* at 413.) Dr. Ang noted that Plaintiff "has ADHD,
9  Depression and Anxiety." (*Id.*)
10      From September 2005 through February 2008, during this two-and-a-half-year
11 span, Plaintiff received mental health treatment from a team at Tri-City Mental
12 Health Center ("Tri-City Team"). (AR at 487-542, 566-1286.) Plaintiff received
13 treatment from the Tri-City Team approximately two to three times a week. (*Id.* at
14 1396, 1429.)
15      Plaintiff was diagnosed with recurrent and severe major depressive disorder
16 and recurrent melancholy with symptoms of isolation, depression, paranoia, lack of
17 motivation, isolation, poor impulse control, and lack of concentration. (*See*, *e.g.*, AR
18 at 487-492.)
19      On September 14, 2005, a member of the Tri-City Team assessed a global
20 assessment of functioning ("GAF") score of "30/45"[6] and indicated Plaintiff was

---

[6] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 2000).

     A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g. depressed man avoids friends, neglects family, and is unable

1  "cooperative, verbal . . . [has history] of family mental illness, [and was] currently
2  homeless." (AR at 542.) Throughout the treatment notes, the Tri-City Team
3  commented that Plaintiff suffered from a functional impairment in her social
4  relationships, including difficulty interacting with personnel in her housing program
5  and other residents, and a strained relationship with her husband. (*See*, *e.g.*, *id.* at
6  499, 505, 507, 673-674, 679, 744-745, 758-760.)

7        On October 13, 2005, Dr. Pieroni, a treating physician from the Tri-City
8  Team, prescribed Zoloft, an antidepressant, and Seroquel, an antipsychotic
9  medication.[7/] (AR at 529-531.) On November 17, 2005, Dr. Pieroni noted that
10  Plaintiff's compliance with medication was "good" and found Plaintiff's thought
11  process to be "logical," but reported "mild impairment in motivation, irritability,
12  [and] sad mood." (*Id.* at 518.)

13        On January 6, 2006, Dr. Pieroni indicated Plaintiff experienced "sporadic
14  depressed mood and tearfulness." (AR at 501.) On January 30, 2006, Dr. Pieroni
15  completed a psychiatric/psychological impairment questionnaire. (*Id.* at 479-486.)
16  In the questionnaire, Dr. Pieroni reported that along with his diagnosis of major
17  depression, Plaintiff suffered from diabetes mellitus and congestive heart failure.
18  (*Id.* at 479.)

19        Dr. Pieroni indicated Plaintiff's primary symptoms were sad mood, irritability,
20  loss of interest in usual activities, loss of energy, poor concentration, insomnia,
21  anxiety, and a phobia of driving on freeways. (AR at 481.) On January 24, 2007,

---

to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV at 34 (bold and capitalization omitted).

     A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34 (bold and capitalization omitted).

[7/]  *See* www.drugs.com.

1  Dr. Pieroni prescribed Plaintiff with Cymbalta, an antidepressant, and Buspirone, an
2  antianxiety medication, but noted that Plaintiff could not afford her Buspirone
3  prescription.[8/]  (*Id.* at 1144.)
4  　　　　　On March 21, 2007, Dr. Pieroni prescribed Plaintiff with Rozerem, a
5  medication used to treat insomnia.  (AR at 1041.)  Dr. Pieroni noted Plaintiff was
6  compliant with her medication on May 16, 2007.  (*Id.* at 1002.)  On September 19,
7  2007, a therapist from the Tri-City Team reported Plaintiff "experiences feeling[s] of
8  helplessness and hopelessness, [and] lacks basic coping and problem solving skills."
9  (*Id.* at 1109.)
10  　　　　　At the administrative hearing, psychiatrist ME Dr. Agler testified that "by
11  direct observation[,]" Plaintiff's diagnosis "is more consistent with . . . mixed
12  personality disorder[,]" but stated that there was insufficient evidence to make a
13  determination and an "accurate diagnosis" was required.  (AR at 1419.)  Dr. Agler
14  reported that "[i]t's possible that personality disorder can be disabling but we don't
15  have any documents[] . . . [and] I would suggest a complete psychological evaluation
16  . . . and total cooperation of [Plaintiff] for testing."  (*Id.* at 1420.)
17  　　　　　Dr. Agler opined that Plaintiff's GAF score of 30/45 assessed by the Tri-City
18  Team in 2005 was a "hurried exam."  (*See* AR at 1420-1422.)  Dr. Agler explained
19  that Dr. Pieroni's "report lists congestive heart failure as one of [Plaintiff's] medical
20  conditions[; however, n]owhere in the records is there any mention of congestive
21  heart failure except there."  (*See id.* at 1422.)  Dr. Agler further stated that "[i]f you
22  accept Dr. [Pieroni's] evaluation then [Plaintiff] would be severely disabled, there
23  would be no question that she meets a listing. . . . But the independent medical and
24  psychiatric evaluations don't find anything approaching that level of disability."  (*Id.*
25  at 1422-1423.)

---

[8/]  *See* www.drugs.com.

11

1        C.    ALJ's Rejection of the Opinions of Dr. Pieroni and the Tri-City Team

2       In his decision, the ALJ rejected Dr. Pieroni's and the Tri-City Team's
3 opinion and, instead, adopted Dr. Agler's opinion. (*See* AR at 24-25.) Specifically,
4 the ALJ concluded that Dr. Agler's opinion was more closely aligned with the
5 objective evidence in the record:

> [Plaintiff's] GAF, assessed as 30 to 45 . . . were not at all consistent
> with the treatment notes from the MSW therapist and [Plaintiff's]
> presentation. Dr. Agler also testified that the extreme assessments of
> [Dr. Pieroni], who erroneously noted that chronic heart failure was
> [Plaintiff's] problem, when this condition is not mentioned anywhere in
> the record, are not supported by the objective evidence of record. He
> stated that were [Plaintiff's] condition as severe as assessed by [Dr.
> Pieroni], mental impairment would be obvious, and, it is not. . . . The
> [ALJ] accepts Dr. Agler's testimony as it is consistent with the
> undersigned's own review of the record.

(*Id.* at 24-25.)

      The ALJ's rejection of the evidence provided by Plaintiff's treating psychiatrist Dr. Pieroni and the Tri-City Team was unwarranted.

      With respect to Dr. Pieroni's opinion, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in rejecting a treating physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995, *as amended* Apr. 9, 1996) ("Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record[.]") (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at 725.

      Here, the ALJ did not cite to any objective findings that contradict Dr. Pieroni's assessment or provide any support for the ME's assertion that Dr. Pieroni's opinion was "extreme." (*See generally* AR at 24-25); *see also Reddick*, 157 F.3d at

725 (Rejection of a treating physician's opinion requires "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct.") (internal citation omitted).

Plaintiff provided over **700 pages** of treatment notes from over two years of treatment by Dr. Pieroni and the Tri-City Team indicating that Plaintiff suffers from major depressive disorder. (*See* AR at 487-542, 566-1286). Further, the ALJ failed to discuss how Dr. Pieroni's "erroneous" note that Plaintiff suffered from chronic heart failure, (*see id.* at 479), extends so far as to discredit all of Dr. Pieroni's treatment records.

Here, Plaintiff also provided evidence from another treating physician that she suffered from a mental impairment. (*See* AR at 321-331, 428-433; *see also id.* at 1340-1343.) Throughout 2002 and 2003, Plaintiff was treated by Nenita C. Belen, M.D. ("Dr. Belen") for her mental impairment. (*Id.*) Dr. Belen noted Plaintiff's symptoms of insomnia, anxiety, and feeling distracted, and reported that Plaintiff was "currently homeless." (*See id.* at 429-432.) Dr. Belen prescribed Plaintiff with antidepressants Prozac and Trazodone. (*Id.* at 428); *see* www.drugs.com.

The Commissioner argues that "[b]oth medical experts were in agreement" that Plaintiff "did not have a severe physical or mental impairment which would significantly limit her ability to perform basic work-related activities." (Joint Stip. at 24.)

However, two non-examining and non-treating MEs' opinions, standing alone, do not constitute "substantial" evidence here. *See Lester*, 81 F.3d at 832 ("In the absence of record evidence to support it, the nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of . . . the examining [physician]'s opinion."); *Erickson v. Shalala*, 9 F.3d 813, 818 n. 7 (9th Cir. 1993) ("the non-examining physicians' conclusion, *with nothing more*,

13

1 does not constitute substantial evidence[]") (internal quotation marks, brackets and
2 citation omitted) (italics in original); *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th
3 Cir. 1984) (when the non-treating, non-examining physician's opinion conflicts with
4 the conclusions of examining physicians, that conclusion does not constitute
5 substantial evidence).

6 Moreover, even assuming, *arguendo*, it was proper for the ALJ to rely solely
7 on the ME's opinion, Dr. Agler testified that while he found Plaintiff's diagnosis
8 "more consistent with . . . mixed personality disorder[,]" an "accurate diagnosis" and
9 further evaluation and testing were required. (*See* AR at 1419.) As such, relying on
10 the ME's opinion, the ALJ had a duty to delve deeper into the record and unearth
11 additional evidence regarding Dr. Agler's opinion that Plaintiff suffered from
12 "mixed personality disorder." *See* 20 C.F.R. §§ 404.1512(e)(1) ("We will seek
13 additional evidence or clarification from your medical source when the report from
14 your medical source contains a conflict or ambiguity that must be resolved, the
15 report does not contain all the necessary information, or does not appear to be based
16 on medically acceptable clinical and laboratory diagnostic techniques.") &
17 416.912(e)(1) (same); *see also Webb*, 433 F.3d at 687 ("The ALJ's duty to
18 supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own
19 finding that the record is inadequate or the ALJ's reliance on an expert's conclusion
20 that the evidence is ambiguous."); *see also Higbee v. Sullivan*, 975 F.2d 558, 561
21 (9th Cir. 1992, *as amended* Sept. 17, 1992) (*per curiam*) (Although it is plaintiff's
22 burden to provide sufficient evidence of entitlement of benefits, it has "long [been]
23 recognized that the ALJ is not a mere umpire at [an administrative hearing], but has
24 an independent duty to fully develop the record[.]").

25 Although the ALJ indicated that the opinion of the ME, Dr. Agler, was
26 consistent with the objective findings in the record, (*see* AR at 24-25), the ALJ
27 failed to cite any medical evidence that supported Dr. Agler's assessment. (*See*
28 *generally id.* at 20-27.) Indeed, a review of the medical record reveals that all of the

14

*treatment* records relating to Plaintiff's mental impairment are consistent with Dr. Pieroni's opinion, (*see id.* at 321-331, 428-433, 487-542, 566-1286), and not Dr. Agler's. Accordingly, the ALJ's rejection of Plaintiff's treating psychiatrist's opinion is not supported by substantial evidence.

With respect to the Tri-City Team treatment records, the ALJ's adoption of the ME's opinion constitutes an implicit rejection of the Tri-City Team's opinion. *See also Smith ex rel. Enge v. Massanari*, 139 F.Supp.2d 1128, 1133 (C.D. Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another physician, is an implicit rejection of the latter). The ALJ's implicit rejection of the findings from the Tri-City Team is legally insufficient. The ALJ provided no rationale for discounting the findings that Plaintiff suffers from recurrent and severe major depressive disorder, other than stating that the "GAF, assessed as 30 to 45 . . . were not at all consistent with the treatment notes from the MSW therapist and [Plaintiff's] presentation." (AR at 24); *see Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (mere summarization and implicit rejection of treating physician's opinion does not suffice); *McAllister v. Sullivan*, 888 F.2d 599, 602-03 (9th Cir. 1989, *as amended* Oct. 19, 1989) (broad and vague reasons will not suffice to support ALJ's conclusions).

In any event, the treatment notes from the Tri-City Team, consistently reporting Plaintiff's impairment in social functioning, support a GAF score of 30 to 45. (*See*, *e.g.*, AR at 499, 505, 507, 673-674, 679, 744-745, 758-760.) Further, the ALJ improperly relied on Plaintiff's appearance at the hearing to reject the Tri-City Team's assessment of a GAF score of 30/45. *See also Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (*per curiam*) (condemning "'sit and squirm' jurisprudence").

In light of the Court's conclusion that the ALJ improperly rejected the opinion of Plaintiff's treating psychiatrist and his treatment team, which provides that Plaintiff suffers from major depressive disorder, the Court is persuaded that Plaintiff

1 submitted sufficient medical evidence to establish that her mental impairment is
2 severe, *to wit*, Plaintiff satisfied her burden of producing evidence that her ability to
3 perform basic work functions is more than minimally limited by her combination of
4 documented impairments.[9/] *See Edlund*, 253 F.3d at 1158 (quoting *Smolen*, 80 F.3d
5 at 1290) (The step-two inquiry is defined as "'a *de minimis* screening device to
6 dispose of groundless claims.'").

In short, the ALJ's conclusion that Plaintiff's mental impairment is not severe
is not clearly supported by the medical evidence. *See Webb*, 433 F.3d at 687
(holding an ALJ's determination that a person does not have a medically severe
impairment must be "clearly established by [the] medical evidence[]") (internal
quotation marks and citation omitted).

### D.     ALJ's Rejection of Dr. Ang

In rejecting the opinion of Plaintiff's treating physician Dr. Ang, the ALJ
found that "the limitations [set forth in the diabetes mellitus impairment
questionnaire completed by Dr. Ang] were not at all consistent with the treatment
notes from the MSW therapist and [Plaintiff's] presentation." (AR at 24; *see also id.*
at 409-414.)

While the ALJ briefly noted that he found Dr. Ang's assessment regarding
Plaintiff's mental impairment "inconsistent with the MSW therapist and [Plaintiff's]
presentation[,]" (AR at 24), the ALJ failed to discuss Dr. Ang's opinion in the
context of Plaintiff's diabetes impairment. (*See generally id.* at 20-27.) Dr. Ang
treated Plaintiff for diabetes. (*Id.* at 409.) Dr. Ang found that Plaintiff suffered from
"loss of manual dexterity [and] tingling of [right] leg," "difficulty walking," along

---

[9/]    The Court notes that even the ALJ's opinion that Plaintiff has a mild limitation in social functioning and a mild limitation in concentration, persistence or pace, (AR at 25), arguably supports a finding that Plaintiff's mental impairment is severe. *See Smolen*, 80 F.3d at 1290 (an impairment is not severe only if it has no more than a minimal effect of an individual's ability to work).

16

1 with a number of other physical impairments. (*See id.* at 409-414.)

2 The ALJ failed to provide any reason, let alone a specific and legitimate one, for implicitly rejecting Dr. Ang's opinion. *See Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830) ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record.").

3 Thus, the ALJ's rejection of Dr. Ang's opinion is not supported by substantial evidence.

## VI.
## AN AWARD OF BENEFITS IS APPROPRIATE

The court has discretion to remand or reverse and award benefits. *McAllister*, 888 F.2d at 603. Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000) ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."); *Varney v. Sec'y of H.H.S. (Varney II)*, 859 F.2d 1396, 1401 (9th Cir. 1988). As the Ninth Circuit teaches in circumstances like the present matter, this Court should

> "credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find that claimant disabled were such evidence credited."

*Benecke*, 379 F.3d at 593.

1    Here, the Court is persuaded that "remanding for further administrative
2 proceedings would serve no useful purpose and would unnecessarily extend
3 [Plaintiff's] long wait for benefits." *Benecke*, 379 F.3d at 595.  As discussed above,
4 *see supra* at § V, because the ALJ did not provide specific and legitimate reasons for
5 his rejection of Dr. Pieroni and the Tri-City Team's opinion, the Court shall credit
6 their opinion as a matter of law.  *See Widmark v. Barnhart*, 454 F.3d 1063, 1069
7 (9th Cir. 2006) ("Because the ALJ failed to provide adequate reasons for rejecting
8 [the examining physician]'s opinion, we credit it as a matter of law."); *Edlund*, 253
9 F.3d at 1160 (crediting, as a matter of law, improperly rejected treating physician
10 opinions); *see also Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990) (remanding
11 for payment of benefits where the Commissioner did not provide adequate reasons
12 for disregarding examining physician's opinion).

13    As noted earlier, the Appeals Council has twice vacated the ALJ's prior
14 decisions and remanded the matter for further proceedings based, in part, on the
15 ALJ's errors in properly evaluating Plaintiff's mental impairments.  (*See* AR at 121-
16 124, 152-154.)  Given the Appeals Council's remand orders, the ALJ should have
17 been notably careful in his evaluation of Plaintiff's impairments.

18    Moreover, during Plaintiff's counsel's cross-examination of the ME, the ME
19 confirmed that if Dr. Pieroni's opinion was accepted, Plaintiff would be entitled to
20 benefits:

21    [Atty]:    If you take [Dr. Pieroni's psychiatric/psychological
22            impairment questionnaire], wouldn't that come close
23            to medium or at least equaling –
24    [ME]:    If you accept [Dr. Pieroni's] evaluation then she
25            would be severely disabled, there would be no
26            question that she meets a listing.
27 (AR at 1422).
28    Further, during Plaintiff's counsel's cross-examination of the VE, the ALJ

18

1  interrupted counsel's use of hypothetical questions of whether someone with
2  Plaintiff's mental limitations would be able to perform her past relevant work.  (AR
3  at 1439.)  The ALJ stated, "I never ask those questions of a VE because if I find that
4  they are markedly impaired the answer is just too obvious that they can't work, they
5  can't do anything, they couldn't get to work."  (*Id.*)  Thus, it is clear from the record
6  as a whole, including the testimony of the ME and the VE, along with the ALJ's
7  own statements, that Plaintiff is unable to perform work.  *See also Benecke*, 379 F.3d
8  at 595 ("[I]n the unusual case in which it is clear from the record that the claimant is
9  unable to perform gainful employment in the national economy, even though the
10 vocational expert did not address the precise work limitations established by the
11 improperly discredited testimony, remand for an immediate award of benefits is
12 appropriate."); *Alfano v. Astrue*, 2008 WL 901692, at *6 (E.D. Wash. Mar. 31, 2008)
13 (awarding benefits where it is clear from the testimony of the ME and VE that
14 Plaintiff cannot perform work at any level).
15        Where, as here, it is clear from the record that crediting Dr. Pieroni's opinion
16 would preclude Plaintiff from engaging in substantial gainful activity, the Court sees
17 no need to return the case to the Commissioner once again to make another
18 determination as to whether Dr. Pieroni's opinion should be credited or rejected.
19 "Allowing the Commissioner to decide the issue again would create an unfair 'heads
20 we win; tails, let's play again' system of disability benefits adjudication." *Benecke*,
21 379 F.3d at 595.  Plaintiff has already waited over eight years for a disability
22 determination.  (*See* AR at 156); *see also Benecke*, 379 F.3d at 595 ("Remanding a
23 disability claim for further proceedings can delay much needed income for claimants
24 who are unable to work and are entitled to benefits, often subjecting them to
25 tremendous financial difficulties while awaiting the outcome of their appeals and
26 proceedings on remand.") (internal quotation marks and citation omitted).
27        In short, a remand for the payment of benefits is warranted now.  *Cf. Varney*
28 *II*, 859 F.2d at 1399 ("Certainly there may exist valid grounds on which to discredit

19

a claimant's pain testimony. . . . But if grounds for such a finding exist, it is both reasonable and desirable to require the ALJ to articulate them *in the original decision*.") (emphasis added).

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** this matter to the Commissioner for the awarding of benefits.

Dated: August 6, 2010 _____

Hon. Jay C. Gandhi
United States Magistrate Judge